**REDACTED COPY**

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

_____ DISTRICT OF MASSACHUSETTS

SCANNED

UNITED STATES OF AMERICA

V.

KRISTI JARVIS
139 Layzon Brother's Road
Springfield, MA

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 04mj652 KPN

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about **May 25, 2004** in **Hampden** county, in the _____ District of **Massachusetts** defendant(s) did, (Track Statutory Language of Offense) travel or cause another to travel, and/or use or cause another to use a telephone, in interstate commerce with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration of a promise or agreement to pay anything of pecuniary value, or who conspires to do so

in violation of Title **18** United States Code, Section(s) **1958**.

I further state that I am a(n) **Special Agent of the ATF** and that this complaint is based on the following facts:
                                        Official Title

See attached affidavit

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

**May 26, 2004**                                    at    Springfield, Massachusetts
Date                                                         City and State

United States Magistrate Judge
Kenneth P. Neiman                                   _____
Name & Title of Judicial Officer                   Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

**AFFIDAVIT OF SPECIAL AGENT PATRICK BURNS**

I, Patrick Burns, being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") have been so employed for over four years. I am currently assigned to the resident office in Springfield, Massachusetts. My duties include the investigations of federal firearms law.

2. Together with the Springfield Police I have been investigating Kristi Jarvis for the use of interstate commerce facilities in the commission of a murder-for-hire of Matthew Thomas Moore ("Moore"), in violation of 18 U.S.C. §1958.

3. This affidavit is not intended to set forth all of the information that I and other law enforcement agents have learned during the investigation, but is submitted as a basis for probable cause to believe that Kristi Jarvis did use interstate commerce facilities in the commission of a murder-for-hire of Matthew Thomas Moore, in violation of 18 U.S.C. §1958.

4. The information contained herein is the result of my own personal involvement in this investigation, as well as my discussions with members of other law enforcement agencies involved in this investigation.

5. On/about May 24, 2004, a cooperating witness ("CW") whose identity is known to me, notified the Springfield Police

Department that a woman, later identified as Kristi Jarvis ("Jarvis"), wanted to pay the CW to murder her husband (Matthew Thomas Moore ("Moore")). The CW explained that he first had contact with Jarvis on/about May 15, 2004, on a telephone chat line. Jarvis identified herself as "Kiki." During their conversations, the CW told Jarvis that he had been incarcerated in state prison. Jarvis told the CW that, if he were interested, she had a job for him. The CW gave Jarvis his home phone number, and told her to call him.

 6. On/about May 19, 2004, Jarvis called the CW at his home. The CW's caller identification feature displayed "K.Jarvis, (413)543-      According to the CW, Jarvis told the CW she wanted him to "get rid" of her husband (who is also the father of her children). The CW agreed to meet Jarvis in Springfield, at the intersection of State and Spring Street, on/about May 21.

 7. On/about May 21, the CW went to the intersection of State and Spring to meet with Jarvis. Jarvis failed to appear. On May 23, Jarvis called the CW and told him that she wanted to "off" her husband. Jarvis told the CW that she had already asked another individual ("John Doe") to kill her husband, but John Doe had been incarcerated before he could carry through with the murder. Jarvis told the CW that she would provide him with a 1994 Mitsubishi (currently inoperable) and $3000.00 to shoot her husband. The CW told Jarvis that he would accept the Mitsubishi

as partial payment. The CW also stated that he could arrange to have the Mitsubishi towed from her house if she were "to sign it over to him" (transfer the title).

8. On/about May 24, at approximately 8:45, Jarvis met the CW on Spring Street and drove him to a convenience store on Spring Street in Springfield, MA. Jarvis told the CW that she wanted her husband killed because he was controlling and abusive. Jarvis gave the CW a photograph of her husband and her, pointed at his image, and said that he was the one she wanted murdered. Jarvis told the CW that she would either obtain a loan or sell some of her husband's stereo equipment in order to collect the $3000.00 payment for the murder. Jarvis also specified that she wanted Moore killed at his employer's site in Connecticut.

9. On/about May 24, 2004, the CW contacted Springfield Police Department and reported the details outlined in above paragraphs #4-7. The CW agreed to cooperate with the police. I arranged, with the CW's consent, to monitor and record any future phone calls that Jarvis made to the CW. On May 24, at approximately 3:45 pm, the CW received a call from Jarvis (the CW's caller identification feature displayed "K.Jarvis, (413)543-    )." During the ensuring conversation, Jarvis and the CW discussed how she would pay the CW for shooting Moore. They spoke in detail about how Jarvis would provide the car (1994 Mitsubishi) to the CW. They also discussed the following manners

3

by which Jarvis would obtain money to pay the CW, including:

1. selling Moore's stereo equipment
2. obtaining a loan
3. obtaining money from "his work" (i.e. Moore's pension or insurance)

During the call, Jarvis indicated that she wanted Moore murdered, and she was willing to pay to have Moore murdered. In response to the CW's question, "Do you want me to shoot him in the head, the stomach, the body?" Jarvis replied "He needs to be shot in the head a couple of times." Jarvis indicated she wanted Moore murdered on Wednesday(5/26/04) or Thursday (5/27/04) at his place of employment in Connecticut. In addition, Jarvis described the area in which he parked, alerting the CW to the presence of a parking lot attendant or security guard. Jarvis and the CW arranged for Jarvis to accompany the CW to Connecticut in order for her to show the CW where her husband works and where he parks his car. Jarvis provided the make and model of Moore's car. During the conversation, Jarvis told the CW that she lived at 139 Layzon Brother's Road.

    10. In the course of my investigation, I viewed a Springfield Police Report that listed the address for Kristi Jarvis as 139 Layzon Brothers Road, Springfield, MA. The report also listed her phone number as (413)543-    the same phone number that displayed on the CW's caller identification feature

when Jarvis called the CW). I showed the CW a photograph of Kristi Jarvis (  /82) and he immediately confirmed that the photograph depicted the same individual who wanted the CW to murder her husband.

11. On May 25, 2004, Jarvis called the CW and indicated that she wanted to proceed with the plan to murder Moore. This phone call was monitored and recorded. Jarvis told the CW that she was ready to sign over the Mitsubishi, and accompany the CW to Connecticut. Jarvis and the CW then arranged to tow her car. At approximately 5 pm, Springfield Police Officer Steven Marangoudakis ("Marangoudakis"), posing as a tow-truck company employee, went to 139 Layzon Brothers Road at which time Jarvis met him. Jarvis signed a document indicating she owned the Mitsubishi, and consented to the towing.

12. Marangoudakis, accompanied by a genuine tow truck driver, attached Jarvis's Mitsubishi to the tow truck. Marangoudakis then gave Jarvis a ride, in the tow truck, to a prearranged location - the Sunoco Gas Station at Page Boulevard and Pasco Street in Springfield - where Jarvis met with the CW and an undercover Alcohol, Tobacco, Firearms & Explosives ("ATF") Agent. Jarvis got into a car with the agent and the CW for the purpose of showing them where Moore worked. While they drove to Connecticut, Jarvis confirmed her intentions of paying to murder Moore. Jarvis directed the CW and undercover agent to Moore's

5

place of employment at the VSA Corp., 1 Market Street, Windsor, Connecticut. After Jarvis showed the CW and the undercover ATF agent where Moore parked his car, the CW drove back to Springfield.

13. At approximately 6pm, members of the law enforcement task force arrested Jarvis.

14. Based upon the investigation described above probable cause exists to believe that Kristi Jarvis did knowing and willfully, travel or cause another to travel, and use or cause another to use a telephone, in interstate commerce, with intent that a murder be committed in violation of state law, and gave consideration of pecuniary value, and made a promise of consideration of future pecuniary value.

15. Wherefore, I respectfully request that a complaint issue charging Kristi Jarvis with use interstate commerce facilities in the commission of a murder-for-hire of Matthew Thomas Moore ("Moore"), in violation of 18 U.S.C. §1958.

                                                                                 Patrick J. Burns
Bureau of Alcohol, Tobacco and Firearms

Subscribed and sworn to before me on the 26th day of May 2004.

_____
KENNETH P. NEIMAN
U. S. Magistrate Judge